This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40333**

**CARLA VALENTINE,**

      Plaintiff-Appellant,

v.

**DR. LAURA HEISCH and HIGH
MESA DENTAL ARTS,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
Jason Lidyard, District Court Judge**

Heather Burke
Santa Fe, NM

for Appellant

Sommer Udall Law Firm, P.A.
Jack N. Hardwick
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Plaintiff Carla Valentine filed a lawsuit against her former employer, Defendants Dr. Laura Heisch and High Mesa Dental Arts, for unlawful discrimination under the New Mexico Human Rights Act (NMHRA), NMSA 1978, Sections 28-1-1 to -14 (1969, as amended through 2023). The jury returned a defense verdict. On appeal, Plaintiff argues that (1) the uniform jury instruction for NMHRA disability discrimination claims, UJI 13-2307C NMRA, is erroneous and improper; (2) the district court erred in various

discovery rulings; and (3) the district court erred in denying Plaintiff's motions for sanctions against Defendants. We affirm.

## DISCUSSION

### I.  The NMHRA and UJI 13-2307C

**{2}** Under the NMHRA, it is an unlawful discriminatory practice for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition . . . to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, sexual orientation, gender, gender identity, pregnancy, childbirth or condition related to pregnancy or childbirth, physical or mental disability or serious medical condition." Section 28-1-7(A). In this case, Plaintiff alleged discrimination based on a serious medical condition.

**{3}** Our Supreme Court has adopted two jury instructions for discrimination claims under the NMHRA: UJI 13-2307C, which is used in cases where the plaintiff alleges discrimination based on a serious medical condition, and UJI 13-2307A NMRA, which is used in cases where the plaintiff alleges discrimination based on race, age, or any other trait enumerated in Section 28-1-7(A). *See* UJI 13-2307A comm. cmt. Because Plaintiff alleged discrimination based on a serious medical condition, the jury was instructed in accordance with UJI 13-2307C and asked to determine whether "Dr. Heisch intentionally discriminated against Plaintiff because of Plaintiff's breast cancer by constructively discharging Plaintiff."

**{4}** On appeal, we understand Plaintiff to argue that (1) UJI 13-2307C is inconsistent with the NMHRA because the NMHRA does not require intentional discrimination; (2) the UJIs for NMHRA discrimination claims set forth different standards and impermissibly place a higher burden of proof on plaintiffs alleging disability discrimination; and (3) UJI 13-2307C improperly requires the jury to find that an employee's disability was the sole cause for the defendant's discrimination, and should instead require the jury to find only that the defendant's "adverse employment action was *motivated in part* by an illegitimate factor." *See Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 8, 136 N.M. 647, 103 P.3d 571 (emphasis added).

**{5}** "We review jury instructions de novo to determine whether they correctly state the law." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (internal quotation marks and citation omitted). "Trial courts are required to instruct the jury on the applicable rules of law using the Uniform Jury Instructions." *Id.*; *see* Rule 1-051(D) NMRA. This Court may consider error in uniform jury instructions adopted by the New Mexico Supreme Court when the instructions have not previously "been considered by the Supreme Court in actual cases and controversies that are controlling precedent." *McNeil v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 19, 141 N.M. 212, 153 P.3d 46 (alteration, internal quotation marks, and citation omitted).

## A. UJI 13-2307C Is Consistent With the NMHRA

{6}     Plaintiff first argues that UJI 13-2307C is inconsistent with the NMHRA because the statute does not require intentional discrimination. In support of her argument, Plaintiff cites to *Muller v. United States Steel Corp.*, which held that "a plaintiff in a job discrimination case need not prove that the employer had a specific intent to discriminate." 509 F.2d 923, 927 (10th Cir. 1975) (noting that a superficially neutral policy may be discriminatory, and to establish a prima facie case of discrimination, "[i]t is sufficient that the employer's conduct produced discriminatory results").

{7}     Defendants correctly point out that *Muller* was a disparate impact case, which "differs from a disparate treatment claim in that it does not involve a showing of discriminatory intent, but rather addresses those situations when an apparently neutral employment policy has a discriminatory effect." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 30, 129 N.M. 586, 11 P.3d 550. When, as here, the plaintiff alleges disparate treatment, the plaintiff is required to show intentional discrimination on the part of the defendant. *See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 11, 130 N.M. 238, 22 P.3d 1188 (holding that in order to prevail on a gender-based employment discrimination claim under the NMHRA, the plaintiff must demonstrate, by direct or indirect evidence, that the defendant intentionally discriminated against her on the basis of her sex); *Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 9-11, 109 N.M. 514, 787 P.2d 433 (holding that in a race and age discrimination lawsuit brought under the NMHRA, the plaintiff must demonstrate that the defendant discriminated against him because of his race or age); *Garcia v. Hatch Valley Pub. Schs.*, 2018-NMSC-020, ¶¶ 26, 28, 458 P.3d 378 (holding that in order to prevail on a discrimination claim under the NMHRA, the plaintiff must demonstrate that the defendant intentionally discriminated against her on the basis of her race and national origin). Consequently, UJI 13-2307C is consistent with the NMHRA and correctly states the standard for a disparate treatment discrimination claim.

{8}     Notwithstanding that UJI 13-2307C technically contains a correct statement of the law, we share Plaintiff's concern that there are two uniform jury instructions for NMHRA discrimination claims that contain different statements of the plaintiff's burden. UJI 13-2307C(5) requires the plaintiff to prove the defendant "intentionally discriminated against the plaintiff because of [the plaintiff's] disability," whereas UJI 13-2307A requires the plaintiff to prove that the plaintiff's protected classification was a "motivating factor" in the defendant's adverse employment action. It is not clear to us why the UJI committee adopted a separate instruction for disability discrimination claims, or why the instructions utilize different language.

{9}     We observe that in ADA cases, intentional discrimination is defined to mean that the plaintiff's disability was a motivating factor in the defendant's adverse action against the plaintiff—essentially combining the concepts set forth in UJIs 13-2307A and 13-2307C. *See Gonzales v. Sandoval Cnty.*, 2 F. Supp. 2d 1442, 1445 (D.N.M. 1998) ("To prove general discrimination under the ADA, a plaintiff must prove that intentional discrimination was a motivating factor in the adverse employment action."); *Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 343 (S.D.N.Y. 2010) (stating that, in

order to prevail on a claim for intentional discrimination under the ADA, the plaintiff must prove that their disability constituted a "motivating factor" for the defendant's adverse employment action); *Matthews v. Commonwealth Edison Co.*, 941 F. Supp. 721, 727 (N.D. Ill. 1996) (noting that to show intentional discrimination in a reduction in force case brought under the ADA, an employee must produce evidence that their disability was a motivating factor in the decision to fire them). We also observe that federal courts have utilized an instruction that likewise combines the concepts set forth in UJIs 13-2307A and 13-2307C when instructing the jury on the plaintiff's burden of proof. For example, in *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999), the jury was instructed in relevant part:

> It is unlawful for an employer to intentionally discriminate against a qualified individual with a disability because of that person's disability. . . . In order for the Plaintiff to establish his claim of intentional discrimination by the Defendant, he has the burden of proving the following essential elements by a preponderance of the evidence that:
>
> . . . .
>
> 2.      *The Defendant intentionally discriminated against the Plaintiff, that is, the fact that the Plaintiff was a qualified person with a disability was a motivating factor in the Defendant's decision to terminate the Plaintiff.*

*Id.* at 1334 n.5 (emphases added); *see also* Model Civil Jury Instruction for the Third Circuit Court of Appeals ch. 9, § 9.1.1 (2023) (stating that to recover on a disparate treatment claim under the ADA, "[plaintiff] must prove that [defendant] intentionally discriminated against [plaintiff]. This means that [plaintiff] must prove that [his/her] disability was a motivating factor in [defendant's] decision to [describe action] [plaintiff]").

**{10}**   We encourage the UJI Civil Committee to consider whether revisions to the jury instructions for NMHRA discrimination claims are necessary to address the lack of uniformity and to provide jurors with a clearer statement of the law. *See Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 30, 142 N.M. 150, 164 P.3d 31.

## B.      The Instructions as a Whole Adequately Instructed the Jury

**{11}**   Plaintiff also argues that UJI 13-2307C improperly requires an employee to prove their disability was the sole cause of the defendant's discrimination, rather than one but-for cause of the adverse action. As Plaintiff correctly notes, our Supreme Court has previously held that an employee is not required to prove that their protected trait "was the sole or primary motivation for the [adverse action]. The employee must only establish that the adverse employment action was motivated in part by an illegitimate factor, such as [disability]." *Nava*, 2004-NMSC-039, ¶ 8. In support of her argument, Plaintiff refers to the language of UJI 13-2307C(5), which requires the plaintiff to prove that the defendant "intentionally discriminated against the plaintiff *because of* [her]

disability." (Emphasis added.) Plaintiff asserts the emphasized language improperly suggests to the jury that her disability must have been the sole or primary motivation for the adverse action.

**{12}** It is not necessary to resolve in this appeal whether UJI 13-2307C, which mirrors the language of Section 28-1-7(A) of the NMHRA, sets forth an appropriate mixed-motive causation standard because the jury in this case also received a separate causation instruction based on UJI 13-305 NMRA, which instructed the jury that

> [a]n act is a "cause" of harm if it contributes to bringing about the harm, and if the harm would not have occurred without it. It need not be the only explanation for the harm, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the act must be reasonably connected as a significant link to the harm.

As a result, the instructions as a whole fairly presented the appropriate causation standard, and there is no basis to disturb the jury's verdict. *See Sandoval v. Gurley Properties Ltd.*, 2022-NMCA-004, ¶ 11, 503 P.3d 410 ("If instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient." (internal quotation marks and citation omitted)).

**{13}** For all of these reasons, we conclude the jury was not improperly instructed on Plaintiff's NMHRA claims.

## II.     Remaining Issues on Appeal

**{14}** We now consider Plaintiff's remaining issues on appeal, which concern the district court's discovery orders and the court's denial of her motions for sanctions against Defendants. We review both matters for an abuse of discretion. *See Vanderlugt v. Vanderlugt*, 2018-NMCA-073, ¶ 30, 429 P.3d 1269; *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136. We will not find an abuse of discretion unless the district court's ruling can be characterized as "clearly untenable or not justified by reason," or "is arbitrary, fanciful or unreasonable." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127 (internal quotation marks and citations omitted).

## A.     Discovery of Electronic Communications and Devices

**{15}** Plaintiff devotes several pages of her briefing to her discovery requests regarding Dr. Heisch's cell phone and electronic communications. We briefly discuss Plaintiff's discovery requests and the district court's ruling before turning to Plaintiff's arguments on appeal.

**{16}** Plaintiff made three discovery requests seeking to compel the production of Defendants' electronic communications and devices. In her interrogatory No. 4, Plaintiff

asked Defendants to "[l]ist all cell/PDA/smart phones, both personal and work issued, associated with Defendant Heisch and Frankie Gavin from the beginning of their employment at High Mesa Dental Arts to present." In requests for production Nos. 10 and 11, Plaintiff asked Defendants to provide "any and all emails, text messages, instant messages, or other communications between Frankie Gavin and Defendant Heisch since the beginning of Ms. Gavin's employment with Defendants," and "[a]ny and all emails, text messages, instant messages, or other communications between Plaintiff and Frankie Gavin and/or Defendants from January 2016 to present." Defendants objected to each of these requests on various grounds, and Plaintiff filed a motion to compel.

{17}    The district court granted, but narrowed, Plaintiff's motion to compel as to requests for production Nos. 10 and 11, holding that Plaintiff was entitled to communications concerning Plaintiff or between Plaintiff and Defendants. Plaintiff does not appear to challenge the substance of those rulings. Thus, this appeal appears only to concern the district court's ruling regarding interrogatory No. 4. The district court ordered Defendants to provide the requested identifying information "for any work only phone issued to . . . Defendant Heisch during the period April 1, 2018 through May 15, 2019 (six months prior to and through the date of the period of the alleged discrimination)."

{18}    Plaintiff's arguments on appeal generally concern whether Dr. Heisch's cell phone was a personal phone or a work phone. Plaintiff argues that Defendants improperly claimed Dr. Heisch's cell phone was a personal phone, and she advocates that the status of the phone as work or personal should not matter for purposes of discovering work-related content or communications on the phone. But Plaintiff fails to acknowledge, much less address, the fact that the district court ordered production of the substantive communications Plaintiff sought in her requests for production Nos. 10 and 11, without regard to whether they were on work or personal device. As a result, to the extent Plaintiff argues that she is entitled to obtain requested communications from Dr. Heisch's cell phone, the district court granted Plaintiff's request and there is nothing further for this Court to do on appeal. To the extent Plaintiff argues the district court erred in concluding that Defendants need not provide identifying information for Dr. Heisch's personal cell phone in response to interrogatory No. 4, Plaintiff has neither shown error nor prejudice by way of her arguments on appeal, particularly in light of the district court's ruling that Plaintiff was entitled to relevant communications.

{19}    We note briefly that Plaintiff argues in her reply brief that Defendants did not produce any text messages following the district court's order. However, Defendants' responses to Plaintiff's requests for production do not appear to be part of the record, and Plaintiff has not directed us to where she made any argument to the district court concerning Defendants' responses to her requests for production after the district court issued its order on her motion to compel. Accordingly, this is not a matter we will review. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 (stating that it is the appellant's burden to provide us with a record sufficient for review of the issues raised on appeal).

## B.    Discovery of Other Employee Evaluations

**{20}**    Plaintiff also argues that the district court erred in declining to compel Defendants to produce all "reviews, evaluations, and/or disciplinary records . . . for all employees of Defendants from January 2016 to [the] present" day. Plaintiff argues that by denying this discovery request, the district court denied her access to evidence necessary to demonstrate how other employees were treated and whether they were subjected to the same requirements as her. Plaintiff claims that without this evidence, the district court prevented her from making any meaningful comparisons between herself and other employees to establish her disparate treatment claim.

**{21}**    Defendants respond that Plaintiff was able to establish through her examination of Dr. Heisch that Plaintiff's job performance before her cancer diagnosis had been good or excellent, and that Dr. Heisch had created a new performance evaluation form the night before she reviewed Plaintiff for the purpose of reviewing Plaintiff. From the portions of the trial record cited by Defendants, it appears Plaintiff was able to examine Dr. Heisch about the newly-created evaluation during her deposition before trial, as Dr. Heisch's deposition testimony was used to impeach her trial testimony. Thus it appears Plaintiff had the opportunity to obtain evidence that allowed her to show that she was subjected to a different evaluation process from Defendants' other employees, and therefore, to show that she was treated differently in comparison. Plaintiff did not address these arguments in her reply, nor has she shown how documentary evidence containing the substance of other employees' evaluations was necessary to her claims in light of the foregoing.

**{22}**    Plaintiff makes an additional argument that during trial, Defendants were able to claim that they later used the same evaluation for other employee evaluations, and Plaintiff was denied the ability to rebut that claim. However, after reviewing the portion of the record cited by Plaintiff in support of this argument, we conclude this argument lacks merit. During the portion of Dr. Heisch's testimony referenced by Plaintiff, Dr. Heisch testified only that she evaluated other employees as part of her practice, and not that she used the same evaluation form she had created for Plaintiff to evaluate other employees.

**{23}**    In sum, Plaintiff has not demonstrated that the district court's rulings on her discovery requests amounted to an abuse of discretion.

## C.    Motions for Sanctions

**{24}**    Finally, Plaintiff argues that the district court erred in denying her motions for sanctions against Defendants under Rule 1-037(B) NMRA for alleged discovery violations. In her first motion, Plaintiff requested that the district court enter a default judgment against Defendants for their "dishonest responses to discovery, spoliation of evidence, obstruction of discovery, and failure to comply with the [c]ourt's [order on Plaintiff's motion to compel]." In Plaintiff's second motion, she again asked the district court to enter a default judgment against Defendants because they "repeatedly and

purposely lied about the existence of discoverable evidence, lied in written discovery, failed to produce discoverable evidence, failed to disclose material facts, and more." After a hearing, the district court orally denied both motions, finding that Plaintiff had not shown any intentional misconduct on the part of Defendants or any intentional noncompliance with the rules of procedure.

**{25}** Our Supreme Court has previously held that the discovery sanction of entry of default judgment is "to be imposed only in extreme cases and only upon a clear showing of willfulness or bad faith." *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 396, 96 N.M. 155, 629 P.2d 231. A willful violation of Rule 1-037 occurs when "there is a conscious or intentional failure to comply with the rule's requirements." *Medina v. Found. Rsrv. Ins. Co.*, 1994-NMSC-016, ¶ 6, 117 N.M. 163, 870 P.2d 125. In conducting our review, "we must be mindful of the nature of the conduct and level of culpability found by the trial court." *Enriquez*, 1998-NMCA-157, ¶ 20. "Because the trial court's decision must be based on its conclusions about a party's conduct and intent, implicit in the standard of review is the question of whether the court's findings and decision are supported by substantial evidence." *Id.*

**{26}** In her briefing on appeal, Plaintiff has not addressed the district court's finding that there was no intentional misconduct on the part of Defendants. Instead, she catalogues a number of examples she claims illustrate Defendants' discovery abuses. In the proceedings below, Defendants responded to every single one of Plaintiff's claims with evidence to rebut them and show that Defendants did not intentionally fail to comply with, or act willfully or in bad faith in response to, Plaintiff's discovery requests. *See United Nuclear Corp.*, 1980-NMSC-094, ¶ 396. The district court, when weighing the evidence, accepted Defendants' version of the facts over Plaintiff's and declined to enter a default judgment against Defendants. *See Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶¶ 24-25, 129 N.M. 639, 11 P.3d 603 (stating that in a hearing on a motion for discovery abuse sanctions, the district court sits as a fact-finder). Because there is sufficient evidence to support the district court's view, the district court's decision-making in this case does not amount to an abuse of discretion. As such, we will not disturb the district court's decision.

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm.

**{28}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**